UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA, *ex rel.*,
JOHN PANARELLO,

                              Plaintiff,

v.

KAPLAN EARLY LEARNING COMPANY,

                              Defendant.
_____

**REPORT AND RECOMMENDATION**

11-CV-00353-WMS-JJM

        This is a *qui tam* action in which the relator, John Panarello, seeks to recover damages and civil penalties on behalf of the United States arising from allegedly false claims for payment submitted by defendant Kaplan Early Learning Company ("Kaplan") in violation of the False Claims Act ("FCA"), 31 U.S.C. §3729(a)(1). Second Amended Complaint [43].[1] The action has been referred to me by Hon. William M. Skretny for supervision of pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions [68].

        Before me is Kaplan's Motion for Reconsideration [75] of Judge Skretny's February 29, 2016 Decision and Order ([63]; 2016 WL 777304) denying in part Kaplan's prior motion for dismissal of the relator's Second Amended Complaint [46]. Oral argument was held on November 2, 2016 [95]. Having considered the parties' submissions [75, 85, 88, 94], together with the government's "Statement of Interest" [93],[2] I recommend that the Motion for Reconsideration be granted and that the Second Amended Complaint be dismissed with leave to replead, but also that

---

[1]     Bracketed references are to the CM/ECF docket entries.

[2]     "While relators indisputably have a stake in the outcome of False Claims Act *qui tam* cases that they initiate, the Government remains the real party in interest in any such action." United States ex rel. Mergent Services v. Flaherty, 540 F.3d 89, 93 (2d Cir. 2008).

Judge Skretny certify his decision on this motion for interlocutory appeal pursuant to 28 U.S.C. §1292(b).

## BACKGROUND

Under the FCA, "any person who (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval [or] (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 . . . plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. §3729(a)(1). "The Act contains a *qui tam* provision designed to encourage private individuals to file suit by offering them a percentage of any money recovered." Mikes v. Straus, 274 F.3d 687, 692 (2d Cir. 2001).

The focus of Kaplan's Motion for Reconsideration is Panarello's "implied false certification" claim.[3] At the time of the Second Amended Complaint, Mikes defined the standard for such a claim in this circuit: "An implied false certification claim is based on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment . . . . Specifically, implied false certification is appropriately applied only when the underlying statute or regulation upon which the plaintiff relies *expressly* states the provider must comply in order to be paid . . . . Liability under the Act may properly be found therefore when a defendant submits a claim for reimbursement while knowing . . . that payment

---

[3] Although Panarello alleges that Kaplan "falsely *stated* and/or certified, by implication . . ." (Second Amended Complaint [43], ¶3, emphasis added), "[t]he use of the ambiguous phrase 'and/or' has been frequently condemned as improper and confusing". In re Fresh & Process Potatoes Antitrust Litigation, 2014 WL 1413676, *4, n. 6 (D. Idaho 2014). At oral argument his attorney confirmed that he is claiming only implied (rather than express) false certification.

expressly is precluded because of some noncompliance by the defendant." Mikes, 274 F.3d at 699, 700 (emphasis in original).

In relevant part, Panarello alleges that "[t]he Davis-Bacon Act requires construction contractors with the Unites States to pay workers prevailing wages . . . . 40 U.S.C. §§3141 *et seq*." (Second Amended Complaint [43], ¶16); that "[t]he Davis-Bacon Act further expressly conditions payment under any construction contract with the United States upon compliance with the Davis-Bacon Act and all of its prevailing wage payment . . . requirements, and expressly provides for payment to be withheld from the contractor in the event of noncompliance with those mandates" (id., ¶18); that "Kaplan submitted false claims . . . in the form of invoices for payment under Playground Construction Contracts where . . . Kaplan knew it had failed to comply with the Davis-Bacon Act with respect to such contracts" (id., ¶52);[4] that "[b]y making a claim for payment under such circumstances Kaplan falsely certified, by implication, that it was in compliance with the Davis-Bacon Act with respect to such contracts, and thus was entitled to payment, when in fact Kaplan was entitled to no payment because of its noncompliance" (id., ¶53); that "[t]he United States, unaware of the false or fraudulent character of the statements, records or claims made or submitted by Kaplan, its agents, and employees, approved, paid and continues to approve and pay claims that otherwise would not have been approved or paid" (id., ¶100); and that "[b]y reason of Kaplan's acts, the United States has been damaged, and continues to be damaged, in a substantial amount yet to be determined" (id., ¶101).

On August 1, 2014 Kaplan moved to dismiss the Second Amended Complaint, including the implied false certification claim, pursuant to Fed. R. Civ. P. ("Rules") 9(b) and 12(b)(6) [46]. By Decision and Order dated February 29, 2016 [63], Judge Skretny granted the motion in part, by dismissing claims accruing before May 20, 2009 (id., pp. 11-12), and that

---

[4] Exhibit A to the Second Amended Complaint lists the contracts at issue.

dismissal is not challenged in the pending motion. However, he refused to dismiss Panarello's implied false certification claim. He reasoned that "liability ensues when a defendant submits a claim for reimbursement while knowing that payment is expressly precluded because of some noncompliance by defendant". Id., p. 7 (*citing* Mikes, 274 F.3d at 700).

   Judge Skretny concluded that "Relator's allegations are sufficient to set forth claims under §3729(a)(1)(A). First, he alleges that Defendant submitted claims for payment to the United States, or a qualifying representative thereof, by submitting invoices for payment to specified federally-funded entities, to be paid from the federal treasury . . . . And consistent with his implied certification theory, Relator alleges that Defendant sought payment of its submitted invoices despite knowing that payment was conditioned on Defendant's compliance with the Davis-Bacon Act . . . . Relator's allegations identify the false documents (invoices) by specific contract number, who submitted them for payment (Defendant), where they were submitted (to specified federally-funded entities), approximately when they were submitted (month and date), and what was false about them (implied certification of compliance with the Davis-Bacon Act). In this Court's view, this minimally meets the Rule 9(b) particularity requirements." Id., pp. 7-8. "Consideration of Defendant's various reasons why the Davis-Bacon Act does not apply . . . would require a fact-based inquiry, which is premature at this stage of the litigation". Id., p. 9, n. 1.

   Judge Skretny also concluded that "Relator's allegations sufficiently state a claim under §3729(a)(1)(B) . . . . Relator plainly alleges that the false records or statements are the invoices submitted for payment, which were false or fraudulent due to the implied certification that Defendant adhered to its obligations under the Davis-Bacon Act. And for the reasons already discussed, the false implied certification was material to Defendant's claim because Defendant was allegedly otherwise not entitled to full payment from the United States." Id., p. 10.

In seeking reconsideration of Judge Skretny's refusal to deny Panarello's implied false certification claim, Kaplan argues that "there has been an intervening change in controlling law", namely the Supreme Court's June 16, 2016 decision in <u>Universal Health Services, Inc. v. United States and Massachusetts, ex rel. Julio Escobar and Carmen Correa</u>, 579 U.S.___, 136 S. Ct. 1989 ("<u>Escobar</u>"). Motion for Reconsideration [75], p. 1. "The decision whether to grant . . . a motion [for reconsideration] lies within the discretion of the district court." <u>Underwood v. B-E Holdings, Inc.</u>, 269 F. Supp. 2d 125, 139 (W.D.N.Y. 2003) (Skretny, J.). "The major grounds justifying reconsideration [include] an intervening change of controlling law." <u>Virgin Atlantic Airways, Ltd. v. National Mediation Board</u>, 956 F.2d 1245, 1255 (2d Cir. 1992). However, "[t]he standard is strict, and reconsideration will generally be denied unless the moving party can point to matters that might reasonably be expected to alter the conclusion reached by the court." <u>Underwood</u>, 269 F. Supp. 2d at 139.

Therefore, I must decide whether <u>Escobar</u> represents a change in controlling law concerning an implied false certification claim, and if so, whether its application would alter Judge Skretny's ruling on Kaplan's prior motion to dismiss.

**ANALYSIS**

In <u>Escobar</u>, the Court stated that "the implied certification theory can be a basis for liability, at least where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." 136 S. Ct. at 2001.

Panarello alleges that "Kaplan submitted false claims . . . in the form of invoices for payment". Second Amended Complaint [43], ¶52. In moving for reconsideration, Kaplan first argues that he has failed to allege "that Kaplan made any specific representations about the goods and services". Kaplan's Memorandum of Law [75-1], p. 2. For the first time in its reply papers, Kaplan submits the invoices themselves. Dutta Declaration [88-1], ¶9; [88-2]. "Although it is plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion . . . a court may choose to admit such evidence where the opposing party will suffer no prejudice." In order to avoid prejudice from Kaplan's belated submission of the invoices, I permitted Panarello to submit a Sur-Reply Memorandum of Law [94]. *See* Chefs Diet Acquisition Corp. v. Lean Chefs, LLC, 2016 WL 5416498, *5, n. 3 (S.D.N.Y. 2016) ("[w]here new evidence is presented in a party's reply brief or affidavit in further support of its motion, the district court should permit the nonmoving party to respond to the new matters prior to the disposition of the motion").

Panarello argues that "if the Court were to give consideration to these newly submitted documents, it would first have to convert the instant motion to one for summary judgment". Sur-Reply Memorandum of Law [94], p. 2. I disagree. Since the Second Amended Complaint itself refers to the invoices ([43], ¶52), they may be considered on this motion. *See* Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002) ("[f]or purposes of [Rule 12(b)(6)], the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . Even where a document is not

incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint").[5]

Escobar involved the submission of claims by Universal Health Services, Inc. and Arbour Counseling Services, seeking reimbursement for counseling services provided to a Medicaid beneficiary. In finding those claims misleading, the Court reasoned that "by submitting claims for payment using payment codes that corresponded to specific counseling services, Universal Health represented that it had provided individual therapy, family therapy, preventive medication counseling, and other types of treatment. Moreover, Arbour staff members allegedly made further representations in submitting Medicaid reimbursement claims by using National Provider Identification numbers corresponding to specific job titles. And these representations were clearly misleading in context. Anyone informed that a social worker at a Massachusetts mental health clinic provided a teenage patient with individual counseling services would probably - but wrongly - conclude that the clinic had complied with core Massachusetts Medicaid requirements (1) that a counselor treating children is required to have specialized training and experience in children's services . . . and also (2) that, at a minimum, the social worker possesses the prescribed qualifications for the job . . . . By using payment and other codes that conveyed this information without disclosing Arbour's many violations of basic staff and licensing requirements for mental health facilities, Universal Health's claims constituted misrepresentations." 136 S. Ct. at 2000–01.

---

[5] I note that the invoices are not properly authenticated. See Dawe v. Corrections USA, 2010 WL 682321, *1 (E.D. Cal. 2010) (defendants attached . . . exhibits 'authenticated' by defendants' counsel. Such authentication is clearly improper because defendant's counsel has failed to demonstrate any personal knowledge as to the authenticity of these documents"). However, Paranello's Sur-Reply Memorandum [94] does not seriously question their authenticity. If necessary, they should be properly authenticated by a Kaplan representative.

Panarello argues that "assuming without conceding that Escobar could be read to require that Kaplan's claims contained representations like those present in Escobar, it would be enough if Kaplan made some truthful assertion about the labor provided in its claims for payment, such as the representation that it provided labor as part of the playground construction. Like the representations of [Escobar] . . . those representations might be true, as far as they go, and be rendered false by the omission of any mention of Kaplan's noncompliance with the Davis-Bacon Act." Panarello's Memorandum of Law [85], p. 8.

I do not agree. Unlike the claims in Escobar, Kaplan's invoices do not use payment codes - in fact, with few exceptions,[6] most of them do not mention labor at all. They do not contain "specific representations about the goods or services provided" of the type at issue in Escobar. Therefore, if such representations are required by Escobar, then leave to replead should be denied, because as Kaplan argues, "[a]mendment here would be futile". Kaplan's Memorandum of Law [88], p. 13 of 14.

However, both Panarello and the government argue that Escobar cannot be read to impose the "specific representations" requirement in every case. Panarello's Memorandum of Law [85], p. 7; government's Statement of Interest [93], pp. 5-6. I agree. Escobar dealt with the submission of payment claims using codes for services provided by social workers and others who lacked appropriate credentials, which it found to be misrepresentations.136 S. Ct. at 2000-01. The Court expressly *declined* to decide whether a claim for payment could itself constitute an implicit representation of entitlement to payment, stating that "[w]e need not resolve whether all claims for payment implicitly represent that the billing party is legally entitled to payment. The claims in this case do more than merely demand payment". Id. at 1999-2000.

---

[6]   *See*, *e.g*., [88-2], pp. 2 and 5 of 34, mentioning "installation".

The fact that Escobar clarified "some" of the circumstances creating implied false certification liability (id. at 1995) suggests that compliance with the conditions it discussed is not necessarily a prerequisite to implied false certification liability in every case. At least one other court shares that view – *see* Rose v. Stephens Institute, 2016 WL 5076214, *5 (N.D. Cal. 2016) ("AAU is incorrect as a matter of law that Escobar establishes a rigid 'two-part test' for falsity that applies to every single implied false certification claim . . . . Escobar . . . does not purport to set out, as an absolute requirement, that implied false certification liability can attach only when these two conditions are met").[7]

However, that court recently certified its decision for an interlocutory appeal pursuant to 28 U.S.C. §1292(b), reasoning that "[a]lthough this court did not understand Escobar to create a rigid two-part test for implied certification liability, other courts appear to treat the two conditions of Escobar as absolute requirements (citations omitted). Because of the uncertainty about this issue in the district courts, the court finds that clarity on the appropriate standard for falsity in implied certification claims post-Escobar would materially advance the resolution of this litigation." Rose v. Stephens Institute, 2016 WL 6393513, *3 (N.D. Cal. 2016). If Judge Skretny adopts my view that the Escobar conditions do not apply in all cases, then I suggest that he likewise certify his decision for interlocutory review, for if the Second Circuit ultimately holds that the Escobar conditions apply in every case, then this action should be dismissed.

In any event, "[l]iability under the Act . . . requires a showing of materiality. Under the Act as currently in force, 'the term material means having a natural tendency to influence, or be

---

[7] *But see* United States v. Sanford-Brown, Ltd., ___F.3d___, 2016 WL 6205746, *1 (7th Cir. 2016), granting summary judgment where "the plaintiff-relator offered no evidence that defendant . . . made any representations at all in connection with its claims for payment, much less false or misleading representations."

capable of influencing, the payment or receipt of money or property'". United States ex rel. Feldman v. Van Gorp, 697 F.3d 78, 86 (2d Cir. 2012) (*quoting* 31 U.S.C. §3729(b)(4)).

In denying Kaplan's prior motion to dismiss, Judge Skretny concluded that "the false implied certification was material to Defendant's claim because Defendant was allegedly otherwise not entitled to full payment from the United States". Decision and Order [63], p. 10. However, Escobar holds that "[a] misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance". 136 S. Ct. at 2003.

Therefore, Judge Skretny's conclusion must be revisited in light of Escobar. The Second Amended Complaint [43] alleges that "Kaplan has been repeatedly and expressly advised of the requirements of [the] Davis-Bacon Act with respect to Playground Construction Contracts . . . by certain of its customers", and that "Kaplan has received numerous requests for certified payroll records and other documentation required under the Davis-Bacon Act . . . and no such records existed". Id.,¶¶48, 49. Citing these allegations, Panarello argues that "[t]he fact that certain of Kaplan's customers repeatedly directed Kaplan's attention to the requirements of the Davis-Bacon Act, insisting that they comply with those requirements before proceeding, demonstrates that Davis-Bacon Act compliance was capable of affecting the decisions of the customers. That Kaplan received requests for certified payroll records, an indication of auditing and compliance enforcement, further shows that Davis-Bacon Act compliance was material to these playground construction projects". Panarello's Memorandum of Law [85], p. 14.

However, the question here is not only materiality, but causation. Panarello contends that the government and its recipients made payments which they would not have made but for Kaplan's misrepresentations, and have thereby been damaged. Second Amended Complaint [43], ¶¶95, 101. Therefore, he must plausibly allege not merely that Kaplan's misrepresentations were "capable of influencing" the payment decisions, but that they *did* influence those decisions.[8]

"[T]he plausibility standard is not akin to a probability requirement . . . . On a motion to dismiss, the question is not whether a plaintiff is *likely* to prevail, but whether the well-pleaded factual allegations *plausibly* give rise to an inference of [liability], *i.e.,* whether plaintiffs allege enough to nudge their claims across the line from conceivable to plausible." Vega v. Hempstead Union Free School District, 801 F.3d 72, 87 (2d Cir. 2015) (emphasis in original). If "certain . . . customers" did in fact remind Kaplan of Davis-Bacon Act requirements (Second Amended Complaint [43], ¶48), then it seems at least plausible that their payment decision was influenced by Kaplan's implied certification that compliance with the Act was not necessary.[9]

Panarello has requested that, if necessary, he be granted leave to amend in light of Escobar "in order to address requirements which in fairness did not exist" at the time of the filing of the Second Amended Complaint. Panarello's Memorandum of Law [85], p. 15. Unless Judge Skretny concludes that Escobar's "specific representations" condition applies here (in which case

---

[8]   Materiality and causation are distinct concepts. *See* United States v. Santiago, 2014 WL 4827883,*5 (S.D.N.Y. 2014) ("a statement is material if it is *capable* of influencing a decision by a decision-making body even if the body did not in fact rely on the statement") (emphasis in original); United States v. Lankford, 2013 WL 2295988, *2 (E.D. Cal. 2013) ("[a] statement's intrinsic capacity to influence, not its [e]ffect or how it is received by the victim, is the focus").

[9]   At oral argument, Panarello's counsel stated: "We are not contending that Kaplan impliedly certified that it had paid prevailing wages under the Davis-Bacon Act. That is not the theory of liability here . . . . The implied certification by Kaplan here was that . . . prevailing wages were not necessary for these construction projects." (Chambers transcription from digital recording).  Panarello should identify the customers referred to in ¶48 of the Second Amended Complaint and furnish further factual elaboration as to how Kaplan implicitly certified that compliance with the Davis-Bacon Act was not required.

amendment would be futile), Panarello should be given that opportunity. See Rogers v. White Metal Rolling & Stamping Corp., 249 F.2d 262, 264 (2d Cir. 1957) (amendment should be allowed "if the controlling law has been altered or clarified" since the prior pleading was filed); City of Chicago v. Purdue Pharma L.P., 2016 WL 5477522, *15 (N.D. Ill. 2016) ("[b]ecause [Escobar's] holdings on implied false certification and materiality were not available at the time the [second amended complaint] was filed . . . Counts IV and V are dismissed without prejudice. The City is given a final opportunity to replead the claims for false statements and false claims").

## CONCLUSION

For these reasons, I recommend: 1) that Kaplan's Motion for Reconsideration [75] be granted, and that the Second Amended Complaint be dismissed, without prejudice to repleading in light of Escobar, and 2) that if he adopts my conclusion that Escobar's "specific representations" condition does not apply in every case, Judge Skretny should certify his decision for an interlocutory appeal pursuant to 28 U.S.C. §1292(b). See Rose, 2016 WL 6393513, *3.

Unless otherwise ordered by Judge Skretny, any objections to this Report and Recommendation must be filed with the clerk of this court by December 1, 2016 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)).  Any requests for extension of this deadline must be made to Judge Skretny.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the

magistrate judge in the first instance.  <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: November 14, 2016

<u>/s/ Jeremiah J. McCarthy</u>
JEREMIAH J. MCCARTHY
United States Magistrate Judge